# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK
### ROCHESTER

| | |
|---|---|
| Amy Devey, individually and on behalf of all others similarly situated, | 6:21-cv-06688 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Big Lots, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Big Lots, Inc. ("defendant") manufactures, labels, markets, and sells 100% Arabica Medium-Dark Roast Colombian (ground) Coffee in cans of 24.2 oz (686g) under its Fresh Finds private label brand which claims to make up to 210 servings of 6 fl oz ("Product").



2.      The back part of the label, which contains brewing instructions, tells purchasers:

EACH SERVING = 6 FL OZ

Refrigerate after opening to help preserve flavor and aroma.

This canister makes up to 210 suggested strength 6 fl oz servings.



3.      The back label states: BREW INSTRUCTIONS For best brewing results we recommend the following

BREW INSTRUCTIONS

For best brewing results we recommend the following

| COLD WATER | FRESH FINDS COFFEE |
| --- | --- |
| 1 Serving (6 fl oz) | 1 Tablespoon |

4.      Reasonable consumers, like Plaintiff, viewed this information, and expected that when these directions were followed, the Product would make 210 cups.

2

5.      Plaintiff expected that if she decided to use more than 1 tablespoon per 6 fl oz, then the "up to" language would be invoked, such that she would be able to make less than 210 cups.

6.      The Preparation Instructions on the label instruct a purchaser to use one tablespoon for each cup of six ounces of water.

7.      Reasonable consumers, including Plaintiff, read, and relied on the promise of "Up To 210 CUPS" when the directions were followed.

8.      Reasonable consumers, including Plaintiff, read, and relied on the preparation instructions to use one tablespoon for each cup of six ounces of water.

9.      However, the representation that the Product makes "Up To 210 CUPS" when the directions were followed is false, deceptive, and misleading.

10.     When consumers, like Plaintiff, followed the Product's directions for use, they could not brew anywhere close to 210 cups.

11.     Plaintiff followed the instructions for use provided on the Product and could not brew anywhere close to 210 cups.

12.     Independent laboratory analysis determined that the Product could only make 152 cups of coffee, when the instructions were followed.

13.     This means the Product provides 58 fewer cups of coffee than promised.

14.     This means that the Product delivers twenty-eight (28) percent fewer cups of coffee than promised on the label, which is what consumers paid for.

15.     No reasonable consumer will expect the number of cups was closer to 150 than 210.

16.     Defendant failed to accurately calculate and verify the number of cups based on the Product's contents and preparation instructions.

17.     Consumers would not know that the Product is unable to make anywhere near the

promised number of cups.

18.    This knowledge would require investigation beyond the store aisle, which is outside of what the average consumer can be expected to know or do.

19.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

20.    By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product that made the number of cups promised, or a small number above or below this figure.

21.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

22.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

23.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

24.    The Product is sold for a price premium compared to other similar products, no less than approximately $6.00 for 24.2 oz (686g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

25.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

26.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

27.    Defendant operates 66 stores in New York.

28.    Defendant's annual revenue is over $5 billion, with food accounting for at least one-third of this total.

29.    Of this amount, Defendant's private label brands are top sellers and known by customers for their quality, especially their coffee.

30.    Plaintiff Amy Devey is a citizen of New York.

31.    Defendant Big Lots, Inc., is a Ohio corporation with a principal place of business in Columbus, Franklin County, Ohio.

32.    Plaintiff and defendant are citizens of different states.

33.    Defendant transacts business within this District through the operation of its stores within this District, which it supplies, staffs, operates, and manages, and its online sales made directly to residents of this District.

34.    Venue is in this District because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

35.    Venue is in the Rochester Courthouse in this District because a substantial part of the events or omissions giving rise to the claim occurred in Monroe County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

<u>Parties</u>

36.    Plaintiff Amy Devey is a citizen of Rochester, Monroe County, New York.

37.    Plaintiff values her money and seeks good values.

38.    Defendant Big Lots, Inc., is a Ohio corporation with a principal place of business in Columbus, Ohio, Franklin County.

39.    Defendant is an American retail company headquartered in Columbus, Ohio with

over 1,400 stores in 47 states, including many stores in New York.

40.    Big Lots formed in Ohio by entrepreneur Sol Shenk in 1967

41.    Shenk was a master of closeout deals on hard-to-find auto parts, and this original

company was Consolidated Stores Corporation ("Consolidated").

42.    In the early 1980s, Consolidated opened the Odd Lots/Big Lots closeout chain.

43.    While initially selling batches of close out items acquired at deep discounts, Big Lots

now sells a wide assortment of brand-name and private label items, such as food, furniture,

seasonal items, electronics and accessories, home decor, toys, and gifts.

44.    Big Lots is unique by combining discount retailing with warehouse-style quantities,

allowing customers to maximize their value.

45.    These facts show a company with a significant amount of goodwill and equity when

it comes to consumer purchasing.

46.    While Big Lots stores sell leading national brands, they sell a large number of

products under one of their private label brands, Fresh Finds.

47.    Private label products are made by third-party manufacturers and sold under the

name of the retailer, or its sub-brands.

48.    Previously referred to as "generic" or "store brand," private label products have

increased in quality, and often are superior to their national brand counterparts.

49.    Products under the Fresh Finds brand have an industry-wide reputation for quality

and value.

50.    In releasing products under the Fresh Finds brand, Defendant's foremost criteria was

to have high-quality products that were equal to or better than the national brands.

51.    Defendant is able to get national brands to produce its private label items due its loyal

customer base and tough negotiating.

52.    That Fresh Finds branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

53.    Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

54.    A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

55.    Private label products under the Fresh Finds brand benefit by their association with consumers' appreciation for the Big Lots brand as a whole.

56.    The development of private label items is a growth area for Big Lots, as they select only top suppliers to develop and produce Fresh Finds products.

57.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from  Defendant's stores, including the location at 3660 Dewey Ave, Rochester, NY 14616, between 2019 and 2021, among other times.

58.    Plaintiff bought the Product because she expected it would could make the number of cups promised on the label, or a small number above or below this number because that is what the representations said and implied.

59.    Plaintiff relied on the words and images on the labels, identified here.

60.    Plaintiff bought the Product at or exceeding the above-referenced price.

61.    Plaintiff would not have purchased the Products if she knew the representations were false and misleading or would have paid less for them.

62.    Plaintiff chose between Defendant's Product and similar products represented

similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

63.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

64.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with their composition.

65.    Plaintiff is unable to rely on the labeling of not only this Product, but other brands and varieties of ground coffee, because she is unsure of whether their representations are truthful about how much coffee they actually contain.

66.    Plaintiff wants to purchase ground coffee and get value for her money because she likes to drink coffee and relies on it to start her day.

<u>Class Allegations</u>

67.    Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.

68.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

69.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

70.    Plaintiff is an adequate representative because her interests do not conflict with other members.

71.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

72.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

73.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

74.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

75.     Plaintiff incorporates by reference all preceding paragraphs.

76.     Plaintiff and class members desired to purchase a product expected to could make the number of cups promised on the label, or a small number above or below this number.

77.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

78.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

79.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

80.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

81.     Plaintiff relied on the representations that the Product would could make the number of cups promised on the label, or a small number above or below this number

82.      Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

83.   The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it could make the number of cups promised on the label, or a small number above or below this number.

84.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

85.   This duty is based on Defendant's outsized role in the market as a trusted store, as described above, which means consumers expect it to be different than other retailers without such a reputation.

86.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

87.   Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

88.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised.

89.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

90.   Defendant had a duty to truthfully represent the Product, which it breached.

91.   This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as a leading retailer, with a history of not just great, one-

of-a-kind deals, but best-in-class customer service and integrity.

92.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a leading grocer.

93.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

94.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

95.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it could make the number of cups promised on the label, or a small number above or below this number.

96.    Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

97.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

98.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 11, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com