UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMY DEVEY, individually and on behalf of
all others similarly situated,

                                  Plaintiff,

                            v.

BIG LOTS, INC.,

                                  Defendant.
_____

                                                                                         <u>DECISION AND ORDER</u>

                                                                                         21-CV-6688L

        Plaintiff, on behalf of herself and a putative class of individuals who purchased the subject product in the state of New York, brings this action against Big Lots, Inc. ("defendant"). Plaintiff alleges that defendant manufactured, marketed and sold 24.2 oz. canisters of Fresh Finds-brand Columbian coffee (the "Product") which were incapable of producing the "up to 210 suggested strength 6 fl. oz. servings" advertised on the label, when prepared according to the label's instructions.

        Plaintiff asserts causes of action for deceptive marketing under N.Y. General Business Law ("GBL") §§349 and 350, breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, 15 U.S.C. §2301 et seq., negligent misrepresentation, fraud, and unjust enrichment, and seeks compensatory, statutory, and punitive damages. (Dkt. #1).[1]

---

[1] Plaintiff's Complaint also requests preliminary and permanent injunctive relief. Conceding in response to the instant motion that she has no legal basis to seek such relief, plaintiff has subsequently withdrawn that request. (Dkt. #20 at 1 n.1).

Defendant now moves to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6), and failure to plead fraud with particularity. (Dkt. #17). For the reasons that follow, that motion is granted.

**FACTUAL BACKGROUND**

Plaintiff alleges that she purchased the Product multiple times between 2019 and 2021, "among other times," at defendant's stores. She also alleges that she read and relied upon the label's representation that the Product contained a sufficient amount of ground coffee to produce approximately "up to 210" 6-oz. servings of coffee when the label's instructions were followed, but that when she followed the instructions for single servings, she was unable to "brew anywhere close" to 210. (Dkt. #1 at ¶¶4, 7, 8, 10, 11, 57, 58). Plaintiff claims that "[i]ndependent laboratory analysis" determined that following the same instructions yielded only 152 "cups" of coffee. She contends that, had she known that she could only make 152 servings of coffee when following the package directions for single servings, she would not have purchased the Product. Moreover, plaintiff alleges that her discovery of the alleged discrepancy on the Product label has made her a fearful and embittered shopper, who "wants to purchase ground coffee," but finds herself "unable to rely on the labeling of not only this Product, but other brands and varieties of ground coffee, because she is unsure of whether their representations are truthful about how much coffee they actually contain." (Dkt. #1 at ¶¶65, 66).

## DISCUSSION

**I.     Relevant Standards**

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court described the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 555 (citations and internal quotations omitted).

When applying this standard, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff, as the nonmoving party. *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. den.*, 531 U.S. 1052 (2000).

**II.    Whether Plaintiff Has Plausibly Alleged A Material Misrepresentation**

It is well settled that a court may determine, as a matter of law, that an allegedly deceptive label would not have misled a reasonable consumer. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Initially, defendant argues that all of plaintiff's claims must be dismissed, because plaintiff has failed to plausibly allege that a reasonable consumer would have been misled by the Product label. Defendant points out – correctly – that plaintiff's complaint repeatedly employs the phrase "cups of coffee" in describing the Product's yield, and even falsely ascribes a promise of "Up To 210 CUPS" to the Product, when neither the word "cup," nor the quoted phrase, appears anywhere on the Product label. (Dkt. #1 at ¶¶7, 9).[2]

---

[2] Defendants are correct that plaintiff falsely quoted the Product label in her complaint, more than once, as promising "Up To 210 CUPS," when no such language appears anywhere on the Product (Dkt. #1 at ¶¶7, 9)(quotation marks in

3

Because a "cup," in American culinary parlance, consists of 8 fl. oz., defendant suggests that plaintiff's averment that the Product could only produce "152 cups of coffee" is actually a self-defeating admission that the Product made 1,216 oz. of coffee (152 cups, multiplied by 8 oz.) – representing over 202 6-oz. servings, a number which approximates the advertised "up to 210."

The Court declines to adopt defendant's interpretation of the plaintiff's terminology. While plaintiff's diction is woefully imprecise, she twice describes preparation of the Product as involving the use of "one tablespoon [of ground coffee] for each *cup of six ounces* of water," suggesting that in using the term "cup," she meant a "cup of six ounces," consistent with the Product label's definition of a single serving as 6 fl. oz. (Dkt. #1 at ¶¶6, 8)(emphasis added). As such, the complaint can be read to plausibly allege that the Product, when brewed in a manner consistent with the single-serving directions on the label, was not capable of producing approximately "210 suggested strength 6 fl. oz. servings of coffee." (Dkt. #1 at ¶2).

Nonetheless, given that plaintiff's computations of the extent of the shortfall appear to have been based on a selective reading of the brewing instructions, a brief departure to filter through the particulars of that calculus is warranted.

According to the complaint, the Product's label specified that the "best brewing" ratio for a single 6-oz. serving was 1 Tablespoon of ground coffee to 6 oz. of water, and that using that ratio, a laboratory found that the Product could prepare only 152 servings – 28% less than the maximum yield of 210 servings indicated on the label. (Dkt. #1 at ¶¶11, 12, 14).

---

original). Even after the error was pointed out in defendant's motion papers, plaintiff persisted, in her opposition, to continually misquote the language on the Product label. (Dkt. #20, Plaintiff's Memorandum of Law at 1, 2, 3, 4, 7). Plaintiff's counsel is admonished that in matters such as this, where a defendant's exact words form the entire basis of the action against it, a legal representative's ethical and professional responsibilities demand that particular care be taken to represent those words accurately and precisely. Accordingly, counsel is cautioned that engagement in false misquotations of the subject labeling has the potential to result in the imposition of sanctions, and should be scrupulously avoided in the future. *See generally Fink*, 714 F.3d 739 at 742 ("[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action . . . to escape admonishment").

However, by focusing solely on the instructions for brewing a *single* serving, plaintiff's calculation completely overlooks the brewing instructions on the label for larger batches, which offer a significantly higher potential yield. While 1 Tblsp. of ground coffee is recommended for a single serving, larger batches require 20% less ground coffee: ¼ cup (4 Tblsp.) for 5 servings, and ½ cup (8 Tblsp.) for 10. (Dkt. #1 at ¶2). *See generally Fink*, 714 F.3d 739 at 742 ("in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial"); *Gordon v. Target Corp.*, 2022 U.S. Dist. LEXIS 48769 at *32-*33 (S.D.N.Y. 2022)(courts view "each allegedly misleading statement in light of its context on the product label . . . as a whole")(citation omitted).

Preparing coffee in batches of 5 or 10 per the label instructions, the 152 Tblsp. of ground coffee that plaintiff alleges the Product contained would yield at least 190 6-oz. servings, a 9.5% shortfall from the maximum of "up to 210 suggested strength" servings indicated on the label – and roughly one third the size of the discrepancy calculated and alleged by plaintiff. (Dkt. #1 at ¶14).

While there is no fixed "bright line" as to the precise point where a yield representation for a product intended to be prepared in varying strengths becomes a misrepresentation so material as to mislead a reasonable consumer, I am not convinced that plaintiff's allegations are sufficient to nudge her claim over that theoretical boundary. Indeed, "up to" statements are generally *not* construed as concrete promises about a product's maximum yield, particularly in relation to products such as ground coffee, for which it is well-known (and as the Product label reflects) that the greater the batch being prepared, the smaller the proportion of product that is necessary to produce a given strength. *See generally Brodsky v. Aldi, Inc.*, 2021 U.S. Dist. LEXIS 185436

(N.D. Ill. 2021)(granting defendants' motions to dismiss putative consumer protection class action based on "makes up to 210 six-ounce cups" coffee labeling).

Again, the concrete numbers alleged in the complaint indicate that the Product yield discrepancy is significantly less than what plaintiff claims: presuming the truth of plaintiff's allegations, a consumer following a brewing method listed on the Product's label could brew more than 90% of the maximum "up to 120 suggested strength 6 fl. oz. servings" described on the Product. Moreover, plaintiff makes no allegation that the Product's representations as to the amount of coffee in each container (by weight) were inaccurate or misleading. As such, the Court finds, as a matter of law, that viewed as a whole, the Product's label would not have misled a reasonable consumer, who followed the instructions on the label, in a manner that the consumer would find to be material. *See generally Alce v. Wise Foods, Inc.*, 2018 U.S. Dist. LEXIS 54009 at *25 (S.D.N.Y. 2018) (a reasonable consumer would not be misled by slack fill in product bag, where the label correctly represented the full weight of the product contained therein). Because all of plaintiff's claims hinge on establishing the existence of such a misrepresentation, they must all be dismissed.

Even assuming *arguendo* that a reasonable consumer could have been materially misled by the Product's labeling, I find that all of plaintiff's claims are nonetheless insufficiently stated on other and further grounds, which are discussed, in turn, below. I find no material misrepresentation. Even if I did, the complaint would still be dismissed.[3]

---

[3] Plaintiff's counsel appears to have made misleading labeling claims somewhat of a cottage industry, having filed over 70 such cases in the Second Circuit, and a few dozen more in other circuits nationwide. The vast majority have already resulted in dismissal, for various reasons. *See, e.g., Gordon*, 2022 U.S. Dist. LEXIS 48769 (dismissing claims regarding allegedly misleading beverage label pursuant to New York law claims of fraud, negligent misrepresentation, breaches of express and implied warranty, unjust enrichment, and/or violation of New York's GBL); *Brown v. Kerry Inc.*, 2022 U.S. Dist. LEXIS 39986 (S.D.N.Y. 2022) (same; beverage label); *Mitchell v. Whole Foods Mkt. Gp., Inc.*, 2022 U.S. Dist. LEXIS 38737 (S.D.N.Y. 2022) (same; ice cream bars label); *Turnipseed v. Simply Orange Juice Co.*, 2022 U.S. Dist. LEXIS 38823 (S.D.N.Y. 2022) (same; almond milk label); *Brown v. Kellogg Sales Co.*, 2022 U.S. Dist. LEXIS 60748 (S.D.N.Y. 2022) (same; Pop-Tart label); *Beers v. Mars Wrigley Confectionery US, LLC*, 2022

**III.     Consumer Protection Claims Under New York GBL §349 and §350**

In order to state a claim under either New York GBL §349 (which prohibits deceptive business practices) or §350 (which prohibits false advertising), plaintiff must allege that the defendant engaged in: (1) consumer-oriented conduct; (2) that was materially misleading; and that (3) plaintiff suffered actual injury as a result of the allegedly deceptive conduct. *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014).

To establish the requisite causal connection between an alleged written misrepresentation and the resulting injury, plaintiff must plausibly allege that she actually viewed the misleading statement prior to making her decision to purchase, and must set forth "where, when and how [she] came to view" it. *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018). *See also Turk v. Rubbermaid Inc.*, 2022 U.S. Dist. LEXIS 50230 at *22 (S.D.N.Y. 2022)(plaintiffs must set forth how they "actually saw or were aware of any statement on the [product at issue] before purchasing"); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014)("[t]o properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased"). *See generally In re NJOY, Inc. Consumer Class Action Litig.*, 2014 U.S. Dist. LEXIS 199368 (C.D. Cal. 2014)(dismissing N.Y. GBL §349 claim, even though complaint alleged that the named plaintiffs were all exposed to and saw the allegedly deceptive material, because they failed to allege the "what, when or where" concerning that exposure); *Whalen v. Pfizer, Inc.*, 9 Misc. 3d 1124(A) (N.Y. Sup. Ct. 2005)("[t]he Court of Appeals has been clear that a

---

U.S. Dist. LEXIS 28898 (S.D.N.Y. 2022) (same; ice cream label); *Santiful v. Wegmans Food Markets, Inc.*, 2022 U.S. Dist. LEXIS 15994 (S.D.N.Y. 2022) (same; cake mix label); *Zachmann v. Coleman Co.*, 2022 U.S. Dist. LEXIS 8649 (S.D.N.Y. 2022) (same; portable cooler label); *Bynum v. Family Dollar Stores, Inc.*, 2022 U.S. Dist. LEXIS 49968 (same; almonds label); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154 (S.D.N.Y. 2021) (same; soy milk label); *Warren v. Whole Foods Mkt. Gp., Inc.*, 574 F. Supp. 3d 102 (E.D.N.Y.2021) (same; oatmeal label); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47 (S.D.N.Y. 2020) (same; ice cream label); *Cosgrove v. Blue Diamond Growers*, 2020 U.S. Dist. LEXIS 229294 (S.D.N.Y. 2020) (same; almond milk label).

plaintiff *need not show* that s/he *relied* on the misrepresentations in order to have a claim under GBL §349. However . . . plaintiff must allege that s/he was exposed to the alleged misrepresentations")(emphasis in original).

Here, plaintiff's complaint contains piecemeal allegations that: (1) "[r]easonable consumers, like plaintiff, viewed th[e] information [on the Product's back label]," at unspecified times and places (Dkt. #1 at ¶4); (2) plaintiff "viewed," "read," and "relied upon" the instructions for use of the Product, on unspecified occasions (Dkt. #1 at ¶¶4, 7, 8); (3) plaintiff purchased the Product on "one or more occasions . . . between 2019 and 2021 . . . among other times," at locations that included one of defendant's stores in Rochester, NY (Dkt. #1 at ¶57); and (4) on one or more unspecified occasions, plaintiff "bought the Product because she expected it would could [sic] make the number of cups [sic] promised on the label, or a small number above or below this number." (Dkt. #1 at ¶58).

Taking plaintiff's averments together and granting her every favorable inference, plaintiff has not sufficiently alleged a causal connection between defendant's labeling, and her alleged economic injury.

Initially, "[a]lthough the plaintiff cites particular misleading statements by [defendant] . . . [s]he nowhere state[s] in h[er] complaint that [s]he saw any of these statements *before* [s]he purchased" the Product. *Gale v. IBM*, 9 A.D.3d 446, 447 (N.Y. 2nd Dept. 2004)(dismissing N.Y. GBL §§349 and 350 claims where plaintiff identified allegedly misleading statements on a product he possessed, but failed to claim that he saw the statements prior to purchasing or coming into possession of it)(emphasis added). *See also Zachmann*, 2022 U.S. Dist. LEXIS 8649 at *9-*10 (dismissing N.Y. GBL §349 and §350 claims where plaintiff alleged that he "sought to purchase" a cooler that would keep ice cold for 5 days, purchased defendant's cooler "in reliance" on their

8

labeling promising that it would keep ice cold for 5 days, and would not have made the purchase or paid a premium had he known the cooler could not do so, because such allegations are insufficient to indicate that plaintiff ever saw the labeling statements prior to purchasing the cooler).

While plaintiff vaguely claims that she purchased the Product at least once at a store in Rochester, New York, and potentially on "more occasions . . . from [d]efendant's [other] stores" within the relevant statute of limitations and also at "other times," and separately avers that she "read" the label's representations and relied upon them, plaintiff does not specify the dates or sequence of any of those events, nor does she otherwise allege that she saw the Product labeling prior to, or in connection with, any particular purchase, at any particular time or place. (Dkt. #1 at ¶¶8, 57, 59). *See Chung v. Igloo Prods. Corp.*, 2022 U.S. Dist. LEXIS 120825 at *25 (E.D.N.Y. 2022)(dismissing GBL claims as insufficiently stated, where plaintiff fails to allege that they purchased the product, or viewed the allegedly deceptive and misleading labels, within New York). When defendants pointed out these deficiencies in their moving papers, plaintiff, perhaps tellingly, declined to amplify or amend her allegations, instead insisting that the "bare-bones" pleading requirements Fed. R. Civ. Proc. 8 did not require anything more of her. (Dkt. #20 at 5).

Because plaintiff's disjointed allegations of label reading and Product purchases at various times and places do not plausibly give rise to the inference that she actually saw and read the Product's label prior to making a specific purchase decision, let alone that such exposure or purchase was one of those alleged to have taken place in in New York, within the applicable three-year statute of limitations, her complaint fails to state a claim under N.Y. GBL §§349 and 350. Those claims are dismissed.

## IV. Breach of Express Warranty Claim

To state a claim of breach of express warranty in New York, "a plaintiff must [allege] an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'" *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 Fed. Appx. 110, 111-12 (2d Cir. 2010) (internal quotation marks and citation omitted) (unpublished opinion). Similarly, to state a claim for common law breach of warranty, a plaintiff must allege: (1) a material statement amounting to a warranty; (2) the buyer's reliance on the warranty as a basis for the contract with the seller; (3) breach of the warranty; and (4) injury to the buyer as a result of the breach. *See Mitchell*, 2022 U.S. Dist. LEXIS 38737 at *23.

"To assert a breach of warranty claim under New York law, 'the buyer must within a reasonable amount of time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" *Gordon*, 2022 U.S. Dist. LEXIS 48769 at *42-*43 (quoting *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2017) and N.Y. U.C.C. §2-607(3)(a)). In pleading pre-suit notice, "plaintiff must provide factual allegations – such as the date and method plaintiff sent a pre-suit notice – supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021).

Here, plaintiff alleges only that she "provided or will provide notice to defendant, its agents, representatives, retailers, and their employees," and that defendant "should have been aware of these issues" due to unspecified "complaints by regulators, competitors, and consumers, to its main offices [and] through online forums." (Dkt. #1 at ¶¶86, 87). It is well settled that such allegations are insufficient to indicate proper notice, or to avoid dismissal. *Gordon*, 2022 U.S. Dist. LEXIS 48769 at *44. *See also Mitchell*, 2022 U.S. Dist. LEXIS 38737 at *23; *Chung v. Pure*

10

*Fishing, Inc.*, 2022 U.S. Dist. LEXIS 52119 at *9 (E.D.N.Y. 2022); *Yu v. Dreyer's Grand Ice Cream, Inc.*, 2022 U.S. Dist. LEXIS 47043 at *22-*23 (S.D.N.Y. 2022); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021).

Plaintiff's breach of express warranty claim is accordingly dismissed.

**V.      Breach of Implied Warranty of Merchantability**

Under the New York Uniform Commercial Code, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. §2-314(a). "A seller of food products, including a retailer, is bound by the implied warranty that the foods sold are fit for human consumption and therefore merchantable." *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020).

Initially, plaintiff's breach of implied warranty claim fails for the same reason as her express warranty: she fails to allege compliance with New York's notice requirement. *Brown*, 2022 U.S. Dist. LEXIS 39986 at *16; *Mitchell*, 2022 U.S. Dist. LEXIS 38737 at *24-*25.

Moreover, plaintiff's implied warranty of merchantability claim is insufficiently stated because she does not plausibly allege that the Product was unfit for human consumption. *See Brown*, 2022 U.S. Dist. LEXIS 39986 at *16 (allegation that product was unfit for human consumption is a necessary element). In addition, where, as here, the only alleged loss is an economic one, "New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warrant[y] of merchantability." *Zachmann*, 2022 U.S. Dist. LEXIS 8649 at *13. "A remote purchaser, such as a retail purchaser, is not in privity with a good's manufacturer." *Id*. (citing *Weisblum v. Prophase Labs., Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015)).

For these reasons, plaintiff's claim for breach of the implied warranty of merchantability is dismissed.

## VI. Magnuson Moss Warranty Act

Although the Magnuson Moss Warranty Act ("MMWA") is a federal statute, liability is premised on violations of state warranty laws. Thus, to state a claim under the MMWA, "plaintiffs must [first] adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Gp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015).

The dismissal of plaintiff's express and implied warranty claims accordingly vitiates her MMWA claim: that claim is hereby dismissed. *See Brown*, 2022 U.S. Dist. LEXIS 39986 at *16; *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69 at*18 (S.D.N.Y. 2021).

## VII. Negligent Misrepresentation

To set forth a negligent misrepresentation claim under New York law, plaintiff must allege that: (1) the defendant had a duty, as a result of a special relationship, to give provide correct information; (2) the defendant made a false representation that they knew or should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it, to his or her detriment. *See Anschutz Corp. v. Marrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2021). In the commercial context, "a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Brown v. Kerry Inc.*, 2021 U.S. Dist. LEXIS 224980 at *18 (S.D.N.Y. 2021)(quoting *Izquierdo v. Mondelez Int'l, Inc.*, 2016 U.S. Dist. LEXIS 149795 at *20 (S.D.N.Y. 2016)). In assessing whether a special relationship exists, courts

applying New York law consider: (1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust and confidence existed between the parties; and (3) whether the speaker was aware of the use to which the information would be put, and supplied it for that purpose. *See Kimmell v. Schaefer*, 89 N.Y.2d 257 (N.Y. 1996).

Defendant argues that plaintiff has failed to allege a "special relationship" sufficient to make out a claim of negligent misrepresentation. The Court agrees.

It is well settled that "[t]he requisite special relationship may not . . . be based solely on [a d]efendant's status as the manufacturer of the [product] because, if this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case." *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880 at *76-*77 (E.D.N.Y. 2015). Simply put, a manufacturer's "obligation to label products truthfully does not arise from any special relationship." *Segedie v. Hain Celestrial Grp., Inc.*, 2015 U.S. Dist. LEXIS 60739 at *36 (S.D.N.Y. 2015).

Here, plaintiff's self-serving and conclusory claims that Big Lots, Inc. enjoys a "best-in-class" reputation for "customer service and integrity," with an attendant duty to accurately represent its products, could be applied to millions of manufacturers and retailers: they do not plausibly describe a relationship of unique "trust and confidence" beyond that of a typical manufacturer and purchaser, or otherwise suggest that any special relationship existed. *See, e.g., Santiful*, 2022 U.S. Dist. LEXIS 15994 at *18 (collecting cases, and finding that basic commercial transactions, such as the purchase of cake mix from a grocery store, do not give rise a special relationship); *Zachmann*, 2022 U.S. Dist. LEXIS 8649 at *16 (allegations that a cooler

13

manufacturer "held itself out as having special knowledge and experience in the sale of coolers" are insufficient to suggest a special relationship).

Plaintiff's negligent misrepresentation claim is dismissed.

## VIII. Fraud

To state a claim sounding in fraud under New York law, plaintiff must set forth facts illustrating: (1) a misrepresentation or material omission of act which was false, and known to be false by the defendant; (2) made for the purpose of inducing reliance by plaintiff; (3) who justifiably relied upon it; and (4) was injured thereby. *See Premium Mortg. Corp. v. Equifax, Inc.*, 585 F.3d 103, 108 (2d Cir. 2009).

In this Circuit, "[a]llegations of fraud are subject to a heightened pleading standard. When alleging fraud, 'a party must state with particularity the circumstances constituting fraud,' Fed. R. Civ. P[roc]. 9(b), which [the Second Circuit] ha[s] repeatedly held requires the plaintiff" to specify (1) the allegedly fraudulent statement; (2) the identity of the speaker; (3) the time and place when the statements were made; and (4) an explanation of why the statement was fraudulent. *Nakahata v. New York-Presbyterian Health Care System, Inc.*, 723 F3d 192, 197-98 (2d Cir. 2013)(quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Further, a plaintiff must allege facts that give rise to a "strong inference of fraudulent intent," either by alleging facts showing that the defendant had the motive and opportunity to commit fraud, or by alleging "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F. 3d 273, 290-91 (2d Cir. 2006).

Here, plaintiff has failed to plausibly allege fraudulent intent. Plaintiff does not set forth any facts that establish a fraudulent motive on the part of the defendant, or that strongly suggest reckless disregard for accurate labeling. She alleges only that the defendant "failed to accurately

calculate and verify" the statement on the Product's label concerning its yield (Dkt. #1 at ¶16), that it therefore "misrepresented" the Product yield, and that "the records [d]efendant is required to maintain, and/or the information inconspicuously disclosed to customers, provide it with actual and/or constructive knowledge of the falsity of the [Product yield] representations." (Dkt. #1 at ¶¶95, 96).

Such allegations are manifestly insufficient to satisfy the Fed. R. Civ. Proc. 9(b) standard for fraudulent intent, and plaintiff's fraud claim is accordingly dismissed. *See Brown*, 2022 U.S. Dist. LEXIS 39986 at *14 (conclusory allegations that manufacturer failed to accurately describe its product on the label, and knew that statements on the label were not true or accurate, and insufficient to allege fraudulent intent); *Santiful*, 2022 U.S. Dist. LEXIS 15994 at *22 (allegations that manufacturer failed to accurately describe a product on its label and in its ingredient list, when it "knew its statements were neither true nor accurate" and would mislead consumers, are insufficient to give rise to an inference of fraudulent intent); *Zachmann*, 2022 U.S. Dist. LEXIS 8649 at *18-*19 (allegations concerning a defendant's self-interested desire to increase sales do not sufficiently allege the motive to commit fraud).

IX.    **Unjust Enrichment Claim**

In order to state a claim for unjust enrichment in New York, plaintiff must plausibly allege that the defendant was: (1) enriched; (2) at the expense of plaintiff; (3) under circumstances wherein equity and good conscience require the defendant to make restitution. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).

While an unjust enrichment claim may be premised on deceptive conduct, "unjust enrichment is not a catchall cause of action to be used when others fail [and an] unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort

claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012). *See also Brady*, 2020 U.S. Dist. LEXIS 5672 at *29 (dismissing unjust enrichment claim as duplicative of plaintiff's claims of breach of express warranty and violation of N.Y. GBL §349 and §350, in the specific context of alleged power bank capacity misrepresentation); *Gonzalez*, 2018 U.S. Dist. LEXIS 171000 at *31-*32 (dismissing unjust enrichment claim that is duplicative of plaintiff's breach of warranty claims); *Greene*, 262 F. Supp. 3d 38 at 77 (dismissing unjust enrichment clam that is based on the same allegations as plaintiff's claims for violation of N.Y. GBL §349 and §350, fraudulent concealment, and intentional or negligent misrepresentation); *Goldemberg*, 8 F. Supp. 3d 467 at 484 (dismissing unjust enrichment claim as duplicative of plaintiff's breach of express warranty claims).

Here, plaintiff's unjust enrichment claim relies on the same operative facts as her other claims. Thus, "to the extent these claims ultimately succeed, the unjust enrichment claim would be duplicative, and to the extent the claims fail, the basis for [plaintiff's] unjust enrichment claim would necessarily crumble." *Brady*, 2020 U.S. Dist. LEXIS 5672 at *29. Plaintiff's unjust enrichment claim is dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint (Dkt. #17) is granted, and the complaint is dismissed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 12, 2022.